# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Monica Watts, | ) |
|            Plaintiff, | ) Civil Action No.: 3:17-cv-02376-JMC |
| v. | ) **ORDER** |
| South Carolina Department of Corrections, | ) |
|            Defendant. | ) |

This matter is before the court for review of the Magistrate Judge's Report and Recommendation ("Report") (ECF No. 29) filed on January 29, 2019. Within the Report, the Magistrate Judge recommends that the court grant Defendant South Carolina Department of Corrections' ("SCDC") Motion for Summary Judgment (ECF No. 21) as it relates to Plaintiff Monica Watts' ("Watts") claims for wage discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"). (ECF No. 29 at 12.) Additionally, the Magistrate Judge recommends that the court decline to exercise supplemental jurisdiction over Watts' remaining state law claim for *quantum meruit*. (*Id.* at 11–12.) For the reasons stated herein, the court **ACCEPTS** the Magistrate Judge's Report (ECF No. 29), incorporating it herein, **GRANTS IN PART** SCDC's Motion for Summary Judgment (ECF No. 21), as it relates to Watts' claims under Title VII, and **REMANDS** this matter to the Richland County Court of Common Pleas for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Report provides a thorough examination of the facts, which this court incorporates herein without a full recitation. (ECF No. 29 at 1–5.) As background, Watts is an African-

American female and began working at SCDC in 1991.[1] (*Id.* at 1; ECF No. 22-2 at 4–5; ECF No. 22-3 at 2.) Watts first served as an administrative specialist at SCDC. (ECF No. 22-2 at 5.) In 2006, Watts was promoted to a Program II Coordinator, Band 6–Level B, with a salary of $37,905.00. (ECF No. 22-3 at 3; ECF No. 29 at 1.) Since her promotion, Watts has received salary increases, and her salary, as of November 17, 2016, is $44,055.00. (ECF No. 22-3 at 3.) By 2010, Watts was responsible for coordinating the release of youth offenders in the Division of Young Offender Parole and Reentry Serveries ("YOPRS") of SCDC. (ECF No. 29 at 2.) On November 2, 2013, Watts was reassigned to the Division of Classification and Women's Facilities. (ECF No. 21-4 at 2.) On January 15, 2016, after David McCall ("McCall") was appointed as SCDC's Deputy Director of Operations, Watts was transferred back to YOPRS. (ECF No. 22-4 at 5.) Ginny Barr ("Barr"), the Division Director of YOPRS, became Watts' supervisor when she returned to YOPRS. (ECF No. 21-11 at 7.)

Forde Claffy ("Claffy") is a Caucasian male who works within the Division of YOPRS as a Program II Coordinator and "covers the whole state." (ECF No. 23-5 at 5; ECF No. 29 at 2.) In April 2013, Claffy worked as a "coordinator for the Intensive Supervision Services (ISS) Referral and Release Authority," which comprised forty-five percent (45%) of his time. (ECF No. 29 at 2.) As of June 2, 2016, Claffy's salary is $61,389.00. (ECF No. 21-9 at 2.) On February 17, 2016, Barr requested SCDC to assign technical support duties to Claffy in order to meet the "IT demands of the Division." (ECF No. 22-7 at 2.) Specifically, Barr proposed that Watts could "expand her duties" and "add specific release processes for Intensive Supervision cases currently being managed by [] Claffy to her job duties," while Claffy could "add IT management services to his

---

[1] As it concerns Watts' educational background, Watts possesses a high school diploma and a bachelor's degree from Limestone College. (ECF No. 22-2 at 3, 12.)

2

job duties, [including] database administration, data management/collection, and human resources." (*Id.*) The formal document memorializing this change, signed on July 22, 2016, indicates that Watts' new job functions included: (1) serving as a coordinator for the "Intensive Supervision Services (ISS) Referral and Release Authority"; (2) screening and auditing all youthful offender records upon admission and prior to release; (3) interpreting sentencing sheets, processing detainers, and tracking offenders; (4) coordinating offender releases with correctional institutions; and (4) serving as a YOPRS liaison with other government agencies. (ECF No. 22-8 at 2–3.) Upon this change, Claffy continued to make $61,389.00 a year, while Watts continued to make $44,055.00 a year. (ECF No. 29 at 2–3.) As it relates to Watts' job duties, Barr submits that Watts' previous duties essentially became obsolete, while Watts maintains that she continued to perform many of the same functions. (*Id.* at 3–4; ECF No. 22-10 at 6–7.)

On March 4, 2016, Watts submitted a formal request for additional pay to SCDC, based upon her reassigned duties. (ECF No. 22-11 at 2–3.) On July 22, 2016, Watts received a response from Dennis Patterson, SCDC's Assistant Deputy Director for Operations, denying her request because her "current salary is comparable with many of the supervisory staff in the YOPRS Division." (*Id.* at 2.) McCall made the final decision regarding Watts' request for a salary increase. (ECF No. 21-13 at 4.) Within his deposition, McCall testified that Watts' pay "was compatible with everybody else's pay." (*Id.*) Moreover, McCall specifically identified other supervisory staff within the YOPRS Division to include, Tim Adams ("Adams"), Megan Calamita ("Calamita"), James Meek ("Meek"), Angela Warren ("Warren"), and Ken Wagner ("Wagner").[2] (ECF No. 22-4 at 16–17.) All of these individuals, including Claffy, were also Program II Coordinators. (ECF

---

[2] McCall was unsure whether Claffy supervised anyone, but emphasized that Claffy and Watts "do totally different jobs." (ECF No. 22-4 at 16–17; ECF No. 23-6 at 5.)

No. 21-12 at 6.) Although they possessed the same job title as Watts (ECF No. 21-12 at 6), Adams, Meek, Warren, and Wagner were paid more than Watts. (*Id.* at 4–5.) As it relates to job duties, Adams, Meek, Warren, and Wagner, all of whom Watts submits are appropriate comparators, were "regional coordinators" supervising approximately sixteen (16) to eighteen (18) field officers. (ECF No. 29 at 5.) SCDC maintains that regional coordinators work seven days a week, are on call "24/7," manage twelve counties, and issue warrants. (ECF No. 23-5 at 3.) Since 2012, Watts has only supervised one person and does not have any duties within the field. (ECF No. 23-4 at 3; ECF No. 23 at 5.) As it concerns Calamita, McCall testified that her responsibilities, when she used to be a Program II Coordinator,[3] "were very different" from those of Watts, and Barr testified that she had "two employees that reported to her." (ECF No. 23-5 at 4.)

Watts filed her Complaint in the Richland County Court of Common Pleas on August 14, 2017. (ECF No. 1-1 at 4–12.) Watts alleges that SCDC violated Title VII by engaging in unlawful gender and race discrimination. (*Id.* at 9–10.) Additionally, Watts also brings a *quantum meruit* claim, premised upon state law, against SCDC. (*Id.* at 11.) SCDC removed Watts' action to the United States District Court for the District of South Carolina on September 5, 2017, invoking the court's federal question jurisdiction under 28 U.S.C. § 1331. (ECF No. 1.)

The Magistrate Judge filed his Report on January 29, 2019. (ECF No. 29.) In analyzing Watts' Title VII claims, the Magistrate Judge concluded that Watts "has not shown similarities in the level of competency, education, or requirements" between herself and other employees, whom she sought to use as comparators, at SCDC. (*Id.* at 11.) Because of a lack of proper comparators, the Magistrate Judge found that Watts "fails to present sufficient evidence to establish a prima

---

[3] Currently, Calamita is no longer a Program II Coordinator, but is now the Assistant Division Director of YOPRS. (ECF No. 23-5 at 4.)

facie case of wage discrimination." (*Id.*) Turning to Watts' claim for *quantum meruit*, the Magistrate Judge recommends that the court decline to exercise supplemental jurisdiction over the claim because the federal claim requires dismissal, there are no underlying federal policies implicated by the claim, and comity favors declining supplemental jurisdiction over a "quintessential state law question[]." (*Id.* at 11–12.) On this same day, the Magistrate Judge apprised both parties of their right to file specific objections to the Report. (ECF No. 29-1 at 1.)

Watts objected to the Magistrate Judge's Report on February 11, 2019. (ECF No. 31.) First, Watts argues that the Magistrate Judge "made an improper determination that [she] did not provide sufficient comparators to make a prima facie case under Title VII." (*Id.* at 3–4.) Watts asserts that she and her comparators "shared the same state job title, same supervisor, maintained similar duties, and were evaluated on the same EPMS evaluations." (*Id.* at 4.) Watts also maintains that she and her comparators have "similar education levels." (*Id.*) Second, Watts submits that the Magistrate Judge erred by determining that her "comparators were not similar enough despite [T]itle VII's relaxed standard [for] valid comparators . . . ." (*Id.* at 5.) Watts also seems to suggest that the Magistrate Judge resolved a factual dispute as it relates to the comparators. (*See id.*)

Shortly after the filing of Watts' Objections, SCDC objected to the Magistrate Judge's Report on February 21, 2019. (ECF No. 32.) SCDC objects only to the Magistrate Judge's recommendation of remanding the remaining state law claim to state court. (*Id.* at 2.) SCDC asserts that the Magistrate Judge did not consider all of the relevant factors for a supplemental jurisdiction analysis and maintains that the factors, on balance, actually weigh in favor of the court's exercise of supplemental jurisdiction. (*Id.* at 2–4.) Watts replied to SCDC's Objection on February 20, 2019, arguing that the factors weigh in favor of remanding the state law claim to state court. (ECF No. 33.) Because this matter has been extensively argued and briefed, it is now ripe for the court's

review. *See generally Sauls v. Wyeth Pharm., Inc.*, 846 F. Supp. 2d 499, 501 (D.S.C. 2012) ("The parties have fully briefed the issues, and this matter is ripe for consideration.").

## II. LEGAL STANDARD

### A. The Magistrate Judge's Report

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge only makes a recommendation to this court, and the recommendation has no presumptive weight. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The responsibility to make a final determination remains with the court. *Id.* at 271. As such, the court is charged with making de novo determinations of those portions of the Report to which specific objections are made. *See* 28 U.S.C. § 636(b)(1). *See also* FED. R. CIV. P. 72(b)(3). In the absence of specific objections to the Magistrate Judge's Report, the court is not required to give any explanation for adopting the Report. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Rather, "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting FED. R. CIV. P. 72 advisory committee's note). Thus, the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

### B. Summary Judgement Under FED. R. CIV. P. 56(a)

A federal court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[S]ummary judgment is proper 'if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). In a summary judgment motion, "[a] court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)). Nevertheless, "the nonmoving party . . . must offer some 'concrete evidence from which a reasonable juror could return a verdict in his [or her] favor.'" *Williams v. Genex Servs., LLC*, 809 F.3d 103, 109 (4th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). Summary judgment is therefore appropriate "when the nonmoving party has the burden of proof on an essential element of her case and does not make, after adequate time for discovery, a showing sufficient to establish that element." *Id.* (citing *Celotex Corp.*, 477 U.S. at 322–23).

### III. DISCUSSION

Both Watts and SCDC specifically object to the Magistrate Judge's Report. (ECF Nos. 31, 32.) Watts objects to the Magistrate Judge's determination regarding her *prime facie* case for wage discrimination and alleges that the Report makes improper factual determinations by concluding that her comparators were inadequate for purposes of Title VII. (ECF No. 31 at 3–6.) SCDC, on the other hand, objects to the Magistrate Judge's recommendation concerning supplemental jurisdiction. (ECF No. 32 at 2–4.) SCDC suggests that the Magistrate Judge conducted an inadequate analysis when recommending that the court decline to exercise supplemental jurisdiction over Watts' state law claim. (*See id.*) The court addresses all of these objections in turn, beginning with those of Watts.

7

## A. Watts' Objections Regarding Comparators Under Title VII

i. Watts' Objection to the Report's Analysis of Her *Prima Facie* Case

Watts argues that she was "similarly situated to her comparators" based on Title VII precedent and the "material aspects of the job." (ECF No. 31 at 4.) She asserts that she and her coworkers "shared the same state job title, same supervisor, maintained similar duties, and were evaluated on the same EPMS evaluations." (*Id.*) Moreover, Watts maintains that her job shared "common factors that would allow for a meaningful comparison." (*Id.* at 4–5.)

Under Title VII of the Civil Rights Act of 1964, employers are prohibited from discriminating against an employee "with respect to his compensation . . . because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may use direct evidence to prove intentional discrimination, but he or she may also utilize the burden-shifting framework set forth in *McDonnell Douglas v. Green*. 411 U.S. 792, 802 (1973). In order to show a *prima facie* case of wage discrimination under Title VII, a plaintiff must show "(1) she is a member of a protected class; (2) she was paid less than an employee outside the class; and (3) the higher paid employee was performing a substantially similar job." *Kess v. Mun. Emps. Credit Union of Balt., Inc.*, 319 F. Supp. 2d 637, 644 (D. Md. 2004) (citations omitted). *See also Brinley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 343 (4th Cir. 1994) ("The plaintiff may establish a *prima facie* case by demonstrating that she is female, i.e., a member of a protected class, and that the job she occupied was similar to higher paying jobs occupied by males." (citation omitted)). "It is the plaintiff's task to demonstrate that similarly situated employees were not treated equally." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981). If the plaintiff establishes a *prima facie* case, the employer must then articulate a legitimate, non-discriminatory reason for the employment decision. *Id.* at 253. If the employer carries this burden, the plaintiff must show "that the neutral

reasons offered by the employer 'were not the true reasons, but were pretext for discrimination.'" *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010) (quoting *Burdine*, 450 U.S. at 253).

As it relates to comparators, a plaintiff must show that they were similar to the comparators "in all relevant respects." *See Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010). *See also Woodward v. United Parcel Serv., Inc.*, 306 F. Supp. 2d 567, 575 (D.S.C. 2004). Some federal courts have opined, in the Title VII context, that "[s]imilarly situated employees 'must be "directly comparable" to the plaintiff "in all material respects,"' but they need not be identical in every conceivable way." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (quoting *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 365–66 (7th Cir. 2009)). Notwithstanding the language from other federal courts, the United States Court of Appeals for the Fourth Circuit permits a plaintiff to provide a comparator using "a relaxed standard of similarity between male and female occupied jobs . . . ." *Brinley-Obu*, 36 F.3d at 343. *See also Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1018–20 (11th Cir. 1994) (noting that Title VII plaintiffs face a lesser burden in comparison to plaintiffs under the Equal Pay Act); *Davis v. S.C. Dep't of Health & Envtl. Control*, C/A No. 3:13-cv-02612-JMC, 2015 WL 5616237, at *9 (D.S.C. Sept. 24, 2015) (stating that claimants proceeding under Title VII for wage discrimination must show "a relaxed standard of similarity"). The equivalence of similarity can be shown if the occupations require "the same type of tasks." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir. 1992). *See also Collins v. Landmark Military Newspapers, Inc.*, C/A No. 2:06cv342, 2007 WL 2301589, at *19 (E.D. Va. Aug. 6, 2007).

Here, Adams, Meek, Warren, and Wagner possessed the same job title as Watts, but were paid higher salaries. (ECF No. 21-12 at 4–6.) However, as accurately noted by the Report, common

employment rankings, job titles, and supervisors are insufficient, by themselves, to establish wage discrimination under Title VII. *See Gustin v. W.V. Univ.*, 63 F. App'x 695, 699 (4th Cir. 2003). A comparator must at least complete "the same type of tasks." *See Collins*, 2007 WL 2301589 at *19. Adams, Meek, Warren, and Wagner did not complete "the same type of tasks" as Watts because they issued warrants, managed twelve county areas, supervised twelve to eighteen employees, and worked seven days a week. (ECF No. 23-5 at 3.) In contrast, Watts: (1) served as a coordinator for the "Intensive Supervision Services (ISS) Referral and Release Authority"; (2) screened and audited all youthful offender records upon admission and prior to release; (3) interpreted sentencing sheets, processed detainers, and tracked offenders; (4) coordinated offender releases with correctional institutions; and (4) served as a YOPRS liaison with other government agencies. (ECF No. 22-8 at 2–3.) Watts has only supervised one individual since 2012. (ECF No. 23-4 at 3; ECF No. 23 at 5.) Watts' job responsibilities are not "the same type of tasks" when compared to Adams, Meek, Warren, and Wagner. As it relates to Claffy, although Watts shared some job duties with him, over half of Claffy's job duties were different from Watts before the reassignment of job responsibilities. (*See* ECF No. 29 at 10–11.) Turning to Calamita, she supervised two employees, while Watts did not. (*Id.* at 9.) Even if any of these individuals were adequate comparators, Watts has presented no evidence of pretext showing that SCDC's decision regarding her salary is false or concerning the ultimate question of discrimination. *See Merritt*, 601 F.3d at 294–95 (noting that a plaintiff must show pretext under the *McDonnell Douglas* framework by a preponderance of the evidence). As such, the Report accurately concludes that Watts has not presented proper comparators or individuals performing "the same type of tasks" for her wage discrimination claims under Title VII. (ECF No. 29 at 8–9.) For these reasons, Watts' first objection is overruled and without merit.

### ii. Watts' Objection to the Report's Alleged Factual Determination

Watts argues that the Magistrate Judge's substantive determination regarding the comparators is an improper factual determination. (ECF No. 31 at 5–6.) Watts points to her deposition testimony in which she purportedly stated that she performed "similar job duties to the job duties [] Claffy used to perform while receiving a lower salary than Claffy received when he performed said duties." (*Id.* at 5.) It seems that Watts is suggesting that the Report's analysis of Claffy's job duties resolves a genuine issue of material fact and should warrant resolution by a jury. (*See id.* at 5.)

At the summary judgment stage, a factual dispute raised by a non-moving party must be "genuine" and "material." *See* FED. R. CIV. P. 56(a). To determine if a fact is "material," a federal court is guided by the substantive law at issue, which will identify the facts that are material and those that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. The United States Supreme Court has instructed that the substantive law identifies "which facts are critical and which facts are irrelevant . . . ." *Id.* A fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The mere existence of "some alleged factual dispute" is insufficient to defeat a well-supported summary judgment motion. *Anderson*, 477 U.S. at 247–48. "A dispute over irrelevant or unnecessary facts will not preclude summary judgment, but the presence of unresolved factual issues that are material to the outcome of the litigation mandates a denial of summary judgment." *GSGSB, Inc. v. N.Y. Yankees*, 862 F. Supp. 1160, 1170 (S.D.N.Y. 1994) (citations omitted).

Although Watts' alleged testimony is material because it would provide evidence that she and Claffy performed "substantially similar jobs," it is not genuine because "a reasonable jury" could not return a verdict for Watts based upon her subjective testimony. *Anderson*, 477 U.S. at

248. While Watts claims that she knew Claffy's job duties, Watts also discredited herself by professing that she lacked knowledge of Claffy's specific position description, which is a credibility issue that a jury would have to reconcile. (*See* ECF No. 31 at 5; ECF No. 21-11 at 9.) Most significantly, a reasonable jury would have the primary evidence detailing Claffy's job duties, which would provide Watts' self-conflicting testimony with little probative value (ECF No. 21-11 at 9; ECF No. 22-5 at 2–34). *See Anderson*, 477 U.S. at 249–50 (stating that summary judgment may be granted with the evidence is merely "colorable" or "not significantly probative"). In other words, Watts' discredited, subjective testimony would not create a genuine issue for a reasonable jury. *See id.* at 256–57 ("As we have recently said, 'discredited testimony is not [normally] considered a sufficient basis for drawing a contrary conclusion.' Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." (quoting *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512 (1984))). Watts' objection is simply not genuine as contemplated by the Supreme Court, as it is merely "colorable," and cannot survive the entry of summary judgment. *Anderson*, 477 U.S. at 248–49. Accordingly, Watts' second objection is overruled.

**B. SCDC's Objection Concerning Supplemental Jurisdiction**

SCDC objects to the Magistrate Judge's recommendation regarding the court's exercise of supplemental jurisdiction. (ECF No. 32 at 2.) SCDC maintains that the Magistrate Judge only addresses "one (1) of the three (3) factors" relevant to a supplemental jurisdiction determination. (*Id.*) SCDC argues that the relevant factors, including convenience and fairness, underlying federal policy, comity, and judicial economy, weigh in favor of the court's exercise of supplemental jurisdiction. (*Id.* at 3–4.)

Under 28 U.S.C. § 1367(a), federal district courts "shall have supplemental jurisdiction

over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Even though a federal district court "shall have supplemental jurisdiction" over related claims within the scope of the court's original jurisdiction, district courts "may decline to exercise supplemental jurisdiction over a claim" if (1) "the claim raises a novel or complex issue of [s]tate law"; (2) "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction"; (3) "*the district court has dismissed all claims over which it has original jurisdiction*"; or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c) (emphasis added). Generally, when a federal district court has dismissed the only federal claim providing it with original jurisdiction, it may remand the remaining state law claims to state court. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). The court possesses "wide latitude" in determining whether to retain supplemental jurisdiction under 28 U.S.C. § 1367(a). *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (citing *Nobel v. White*, 996 F.2d 797, 799 (5th Cir. 1993)). The court considers "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Id.* (citations omitted). Based upon the court's review above, the court will grant SCDC's Motion for Summary Judgment as it relates to Watts' Title VII claims, the only federal claims before the court. *See supra* Part III.A. Thus, the state law claim for *quantum meruit* remains. (*See* ECF No. 1-1 at 11.)

13

As an initial matter, the Fourth Circuit has delineated four factors, not three, for a federal district court to consider when deciding whether to either decline or exercise supplemental jurisdiction. *Shanaghan*, 58 F.3d at 110. Those factors include (1) convenience and fairness to the parties; (2) the existence of any underlying issues of federal policy; (3) comity; and (4) considerations of judicial economy.[4] *See id. See generally Croft v. Bayview Loan Servicing, LLC*, 166 F. Supp. 3d 638, 642–43 (D.S.C. 2016) (declining to exercise supplemental jurisdiction after analyzing convenience and fairness, the underlying issues of federal policy, comity, and considerations of judicial economy). In considering the convenience and fairness to the parties, even though SCDC removed the action as of right, Watts originally filed her action in state court as opposed to federal court. *See generally Ndanyi v. Aureon HR I Inc.*, C/A No. 6:18-2531-HMH-JDA, 2018 WL 6065354, at *1–2 (D.S.C. Nov. 20, 2018) (overruling an objection asking the court to retain supplemental jurisdiction when the suit was originally filed in state court); *Varner v. SERCO, Inc.*, C/A No. 2:16-cv-2340-DCN, 2018 WL 1305426, at *4 (D.S.C. Mar. 12, 2018) (exercising supplemental jurisdiction when a plaintiff originally filed his lawsuit in federal court). As accurately noted by the Report, there are no federal policies underlying Watts' state law claim because it is solely rooted in the common law of South Carolina, and the federal claim is extinguished. *See Ferrara v. Hunt*, C/A No. 0:09–2112, 2012 WL 1044488, at *6 (D.S.C. Mar. 28, 2012) (holding that there was no federal policy in litigating remaining state law claims, brought under the South Carolina Tort Claims Act, for malicious prosecution and defamation in federal court because the only federal claim, brought under 28 U.S.C. § 1983, was dismissed); *Coker v. Int'l Paper Co.*, C/A No. 2:08–1865–DCN–BM, 2010 WL 1073643, at *3 (D.S.C. Mar. 18, 2010)

---

[4] The Magistrate Judge's Report clearly examines two of the four factors for a supplemental jurisdiction determination. (*See* ECF No. 29 at 11–12.)

("The garden variety state contract and tort claims at issue do not implicate any underlying issues of federal policy."). Comity favors allowing a state court to resolve the state law claim. *See generally Perkins v. S.C. Cmty. Bank*, C/A No. 3:14-3245-TLW, 2017 WL 121851, at *4 (D.S.C. Jan. 12, 2017). Lastly, judicial economy does not disfavor remand to state court merely because the parties have already briefed the state law claim. *See generally Ryals v. City of Hanahan*, C/A No. 2:17-cv-2185-RMG, 2018 WL 6061226, at *3 (D.S.C. Nov. 20, 2018) ("There are no issues of judicial economy weighing against remand as discovery is complete and the case is pending resolution."). Indeed, the Magistrate Judge's Report does not even address Plaintiff's remaining state law claim, and the court would also be examining that claim in the first instance. (*See* ECF No. 29.) As such, judicial economy does not favor supplemental jurisdiction, but instead favors remanding the action to the Richland County Court of Common Pleas. For these reasons, the factors weigh in favor of remanding Watts' claim for *quantum meruit* to the Richland County Court of Common Pleas. Accordingly, the court overrules SCDC's objection.

### IV. CONCLUSION

For the reasons set forth herein, the court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 29), incorporating it herein, and finds it to be an extremely thorough and well-reasoned opinion. Therefore, the court **GRANTS IN PART** SCDC's Motion for Summary Judgment (ECF No. 21), as it relates to Watts' claims under Title VII, and **REMANDS** this matter to the Richland County Court of Common Pleas for further proceedings.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

March 11, 2019
Columbia, South Carolina